### In re ROFF.

No. 26074.   Oct. 22, 1935.

Frank G. Anderson, V. P. Crowe, and W. W. Rodgers, for State Bar.

C. W. Van Eaton and E. S. Ratliff, for respondent.

McNEILL, C. J. This action involves the disbarment of an attorney at law.

A complaint was lodged against the respondent, Charles L. Roff, charging that he had entered into an agreement with certain individuals to sell and dispose of stolen stocks known to have been stolen, and that he thereafter attempted to dispose of said stolen securities; that by reason thereof he has ceased to possess that professional standing and good moral character prerequisite to the admission to the practice of law so as to render him an unfit, unsafe, and untrustworthy person in such profession, subjecting himself to disbarment, suspension, or disciplinary measures.

The respondent denied the charges, admitting that he had entered into a conference with certain persons for the sale and marketing of certain securities.

Respondent does not deny that he knew these securities were stolen, but contends that he was acting in conjunction with the Bureau of Criminal Identification of the state of Oklahoma in an attempt to locate and to check certain stolen bonds, concerning which a representative of said bureau had talked to him and enlisted his efforts for the purpose that the guilty persons might be apprehended and brought to justice; and that he engaged in this practice for the purpose of securing a reward.

The administrative committee found in part as follows:

"The committee finds from the evidence that although the respondent, Charles Roff, had a considerable time prior to the acts in question discussed recovering stolen Liberty bonds with a member of the State Bureau of Criminal Identification and Investigation, that he did negotiate with certain third parties and obtain certain stocks from the third parties which he knew were stolen for the purpose of attempting to sell the same. That he did attempt to sell these stocks, but became frightened in the office of a prospective purchaser and left and returned the stocks to third parties, and after a story had appeared in the paper in which it was stated that the authorities were looking for a lawyer by the name of Roff in connection with the attempted sale

308

of these bonds, he then went to the county attorney and advised him that he was the Roff they were looking for.

"The committee finds that although Roff testified that he was working with the State Bureau of Identification that he had not advised them that he was dealing with these third parties regarding these stocks, nor had he advised the county attorney that he had them in his possession, nor did he advise the county attorney or other officers where they could apprehend the criminals who had these stocks and delivered them to him."

This committee recommended that the respondent be suspended from the practice of law for the period of one year. Thereafter the matter was reviewed by the Board of Governors, and the Board of Governors, after a review, concluded as follows:

"Conclusion.

"The Board of Governors conclude as a matter of law that the respondent, Charles Roff, is guilty of a willful violation of his duty as an attorney and counselor at law in that he entered into a corrupt agreement and a conspiracy with John Ditmore, Jimmie Wilson, and Clifford Wilson to sell for them, stolen stocks, bonds, and securities and which the four knew was stolen property; and in furtherance of the corrupt scheme that the respondent attempted to sell said stolen property and offered it for sale to one M. C. Kelley, of Oklahoma City, and failing in his attempt to sell the stolen property, returned it to the other three conspirators, and then after the news item referred to was published in an Oklahoma City paper, sought and obtained immunity from prosecution by disclosing to public officers his connection with the matter.

"Recommendation.

"The Board of Governors of the state of Oklahoma recommends to the Supreme Court that the respondent, Charles Roff, be disbarred from the practice of law and his name stricken from the rolls of the attorneys in the Supreme Court of the state of Oklahoma."

It will serve no useful purpose to detail the facts in this case. We have read this record. The perspective is plainly unwholesome, unbefitting, and unbecoming the professional conduct of an attorney at law.

After an attorney has been privileged to be admitted to the time-honored profession of law, the dignity of his profession and his duties and obligations as an attorney should never compel him to stoop from honor and integrity. His conduct in relation with the court, his client, and the people should be maintained on a high plane and without suspicion of wrong and moral obtuseness.

The purpose of admitting an attorney to the bar should be to promote the ends of justice. This implies "something more than private gain." People v. Culkin, 248 N. Y. 465, 162 N. E. 487, 489, 60 A. L. R. 851. See, also, State ex rel. Seton v. McMenamin (Ore.) 29 P. (2d) 520, 521; In re Bond, 168 Okla. 161, 31 P. (2d) 921.

The courts must depend upon the integrity and the sound moral character of the members of the bar to protect the public from the incompetent, untrustworthy, and dishonest practitioner at the bar.

We conclude that the recommendation of the Board of Governors is amply warranted by the evidence and is not against the clear weight thereof. Respondent is disbarred from the practice of law within this state and his name is stricken from the rolls of attorneys in the Supreme Court of this state.

RILEY, BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, V. C. J., not participating.